HMG/GRB:USAO#2009R0187

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. WDQ-12-0400 |
| | : | |
| v. | : | (Conspiracy, 18 U.S.C. § 371; Bribery, |
| | : | 18 U.S.C. § 201) |
| KIRAN DEWAN, | : | |
| AMJAD ISRAR, | : | **UNDER SEAL** |
| MOHAMMAD KHAN, | : | |
| KHAZAR NADAR, and | : | |
| NARAYAN THAPA, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

...oOo...

## SUPERSEDING INDICTMENT

### COUNT ONE

The Grand Jury for the District of Maryland charges:

### INTRODUCTION

At times relevant herein:

1.  Defendant **KIRAN DEWAN ("DEWAN")** was licensed to practice law in the State of Maryland. He operated the Law Offices of Dewan and Associates, P.C., which was located at 7100 Security Boulevard, Windsor Mill, Maryland 21244.

2.  **DEWAN** held himself out as an attorney specializing in all aspects of tax compliance, as a certified public accountant with over 15 years of experience, and with experience handling all types of immigration matters, including family visas, green cards, and work visas.

3.  **DEWAN** lived in Howard County, Maryland.

4. Defendant **AMJAD ISRAR** ("ISRAR") was a citizen of Pakistan, who lived in Cheshire, Connecticut and operated multiple convenience stores named Krauszer's.

5. Defendant **MOHAMMAD KHAN** ("KHAN") was a citizen of Pakistan, who lived in Baltimore City, Maryland, and operated Pizza City, a restaurant located in Brooklyn Park, Maryland.

6. Defendant **KHAZAR NADAR** ("NADAR") was a citizen of Pakistan, who lived in Catonsville, Maryland, and worked at several gas stations located in Maryland.

7. Defendant **NARAYAN THAPA** ("THAPA") was a citizen of Nepal, who lived in Perry Hall, Maryland, and worked at a restaurant located in Baltimore City, Maryland.

8. The United States Citizenship and Immigration Services ("USCIS") was a component of the United States Department of Homeland Security ("DHS"), and administered many of the immigration and naturalization services previously handled by the U.S. Immigration and Naturalization Service ("INS").

9. Individuals seeking lawful permanent resident status had to file an Application To Adjust To Lawful Permanent Residence (Form I-485) with USCIS.

10. Applicants for Lawful Permanent Residence had to submit certain information to USCIS, including but not limited to: biographical information, their basis for seeking lawful permanent residence, a copy of their passport, information regarding their spouse and family members, and information about their past, such as any criminal acts, membership in particular organizations, and other information.

11. After filing a Form I-485, applicants were required to provide fingerprints at USCIS approved locations.

12. After applicants filed the application for lawful permanent residence, USCIS issued them Employment Authorization Documents, which permitted applicants to legally work in the United States.

13. When USCIS granted an applicant lawful permanent resident status, USCIS issued the applicant a Lawful Permanent Resident Card, which was commonly called a "Green Card."

14. Applicants who were granted lawful permanent resident status could work in the United States, file additional petitions for immigration benefits for their spouses and family members, and apply for citizenship after meeting certain additional requirements.

15. An undercover federal agent (hereinafter "UC1") posed as a public official, that is: a Supervisor acting for and on behalf of USCIS, a branch of the United States Government, in the District of Columbia and Baltimore, Maryland.

16. UC1 advised **DEWAN** that he was a supervisor for USCIS, working in the District of Columbia and Baltimore, Maryland.

## THE CONSPIRACY AND ITS OBJECTS

17. From a date unknown to the Grand Jury, but beginning at least in or about March 2011, and continuing at least until the date of this Indictment, in the District of Maryland and elsewhere,

**KIRAN DEWAN,
AMJAD ISRAR,
MOHAMMAD KHAN,
KHAZAR NADAR, and
NARAYAN THAPA**

the defendants herein, did knowingly and willfully combine, conspire, confederate and agree with each other, and with persons known and unknown to the Grand Jury, to directly and indirectly, corruptly give, offer, and promise a thing of value to a public official with the intent to influence a public official to commit and aid in committing and to collude in, and allow, and to make opportunity for the commission of a fraud on the United States, in violation of 18 U.S.C. § 201(b)(1)(B).

## METHODS AND MEANS

18. It was part of the conspiracy that **ISRAR, KHAN, NADAR** and **THAPA** sought **DEWAN's** assistance in obtaining lawful permanent residence, Employment Authorization Documents, and Green Cards.

19. It was further part of the conspiracy that **DEWAN, ISRAR** and **KHAN** met at the Law Offices of Dewan and Associates, P.C.

20. It was further part of the conspiracy that **DEWAN** obtained money from **ISRAR, KHAN, NADAR,** and **THAPA** to bribe UC1 and to obtain lawful permanent residence,

Employment Authorization Documents, and Lawful Permanent Resident Cards for **ISRAR, KHAN, NADAR** and **THAPA**.

21. It was further part of the conspiracy that **DEWAN** prepared fraudulent immigration documents, including but not limited to Forms I-485, for **ISRAR, KHAN, NADAR** and **THAPA** to sign and submit to UC1 and USCIS.

22. It was further part of the conspiracy that **DEWAN** provided money to UC1, whom **DEWAN** believed to be a public official, that is: an employee acting for and on behalf of USCIS, a branch of the United States Government.

23. It was further part of the conspiracy that **DEWAN, ISRAR** and **KHAN** falsely represented on the immigration forms that **ISRAR** and **KHAN** were married to United States citizens, and that **ISRAR** was married to a woman with the initials **MG** and **KHAN** was married to a woman with the initials **LD.**

24. It was further part of the conspiracy that **DEWAN, ISRAR, and KHAN** used the fraudulent spouses **MG and LD** as purported bases for seeking lawful permanent residence.

25. It was further part of the conspiracy that **DEWAN, NADAR, and THAPA** falsely represented on the immigration forms that **NADAR's** and **THAPA's** employers had sponsored them to seek lawful permanent residence, when in fact the employers had not done so.

26. It was further part of the conspiracy that **DEWAN, ISRAR, KHAN, NADAR** and **THAPA** met with UC1 to create documents, including fingerprint cards and photographs, for submission to USCIS.

27. It was further part of the conspiracy that **DEWAN, ISRAR, KHAN, NADAR** and **THAPA** met with UC1 at a hotel, rather than in a government office building, in connection with the **ISRAR, KHAN, NADAR** and **THAPA** applications to UC1 and USCIS.

28.     It was further part of the conspiracy that **DEWAN** used telephones to communicate regarding bribery and immigration fraud.

## OVERT ACTS

29.     In furtherance of the conspiracy, and to effect the objects thereof, at least one of the co-conspirators herein committed or caused to be committed at least one of the following acts, among others, in the District of Maryland, and elsewhere:

a.      On or about March 18, 2011, **DEWAN** met with UC1 in Baltimore City, Maryland, to discuss **DEWAN** obtaining UC1's assistance in processing immigration documents through USCIS.

b.      On or about July 21, 2011, **DEWAN** met with UC1 in Windsor Mill, Maryland, where **DEWAN** paid UC1 $12,000 as a down payment for UC1 to provide **ISRAR** and **KHAN** with lawful permanent residence status, Employment Authorization Documents, and Lawful Permanent Resident Cards. **DEWAN** also provided UC1 with immigration forms in order to prepare Employment Authorization Documents and a Lawful Permanent Resident Card for **ISRAR** and **KHAN**.

c.      On or about August 25, 2011, **DEWAN**, **ISRAR** and **KHAN** met with UC1 in White Marsh, Maryland, where UC1 obtained fingerprints and photographs from **ISRAR** and **KHAN**, in order to prepare Employment Authorization Documents and Lawful Permanent Resident Cards for **ISRAR** and **KHAN**.

d.      On or about September 1, 2011, **DEWAN** met with UC1 in Windsor Mill, Maryland, where **DEWAN** provided UC1 with additional immigration forms (Form I-130) for **ISRAR** and **KHAN**.


  e. On or about September 13, 2011, **DEWAN** met with UC1 in Windsor Mill, Maryland, where **DEWAN** paid UC1 $36,000 as the second installment payment to prepare Employment Authorization Document and Lawful Permanent Resident cards for **ISRAR** and **KHAN**.

  f. On or about November 1, 2011, **DEWAN** met with UC1 in Windsor Mill, Maryland, where **DEWAN** provided additional immigration forms (Form I-130) for **ISRAR** and **KHAN**.

  g. On or about November 22, 2011, **DEWAN** met with UC1 in White Marsh, Maryland, where **DEWAN** paid UC1 $12,000 as the final installment payment to provide **ISRAR** and **KHAN** with lawful permanent residence status, Employment Authorization Documents, and Lawful Permanent Resident Cards.

  h. On or about January 13, 2012, **DEWAN** met with UC1 in White Marsh, Maryland, where UC1 delivered Lawful Permanent Resident Cards to **DEWAN** for **ISRAR** and **KHAN**.

  i. On or about May 2, 2012, **DEWAN** met with UC1 in Windsor Mill, Maryland, where **DEWAN** paid UC1 $5,000 as a down payment for UC1 to provide **THAPA** with lawful permanent residence status, Employment Authorization Documents, and a Lawful Permanent Resident Card. **DEWAN** also provided UC1 with immigration forms in order to prepare Employment Authorization Documents and a Lawful Permanent Resident Card for **THAPA**.

  j. On or about May 17, 2012, **DEWAN** met with UC1 in Windsor Mill, Maryland, where **DEWAN** provided UC1 with an additional immigration form and passport photos in order

to prepare Employment Authorization Documents and a Lawful Permanent Resident Card for **THAPA**.

k.   On or about June 14, 2012, **DEWAN**, **NADAR** and **THAPA** met with UC1 in White Marsh, Maryland, where UC1 obtained fingerprints and photographs from **NADAR** and **THAPA**, in order to prepare Employment Authorization Documents and Lawful Permanent Resident Cards for **NADAR** and **THAPA**.  In addition, **DEWAN** paid UC1 $7,000 as a down payment to for UC1 to provide **NADAR** with lawful permanent residence status, Employment Authorization Documents, and a Lawful Permanent Resident Card.  Finally, **DEWAN** provided UC1 with immigration forms in order to prepare Employment Authorization Documents and a Lawful Permanent Resident Card for **NADAR**.  **DEWAN** explained to UC1 that he charged **THAPA** and **NADAR** an additional $20,000 each to have UCI prepare Employment Authorization Documents and Lawful Permanent Resident Cards for **NADAR** and **THAPA**.

l.   On or about July 12, 2012, **DEWAN** met with UC1 in White Marsh, Maryland, where **DEWAN** agreed to wire UC1 $36,000 as the second installment payment to UC1 for UC1 to provide **THAPA** and **NADAR** with lawful permanent residence status, Employment Authorization Documents, and a Green Card.  **DEWAN** explained to UC1 he would charge UC1 an eight percent commission fee for this wire, which would be paid at a later date.

m.   On or about July 17, 2012, **DEWAN** wired $36,000 from the attorney trust account for "Law Offices of Dewan and Associates, P.C.," at Sandy Spring Bank located in Olney, Maryland, account ending in 3801, to an overseas NatWest bank account located in London, England as the second installment payment to UC1 for UC1 to provide **THAPA** and

**NADAR** with lawful permanent residence status, Employment Authorization Documents, and a Lawful Permanent Resident Card.

n.   On or about October 15, 2012, **DEWAN** met with UC1 in Columbia, Maryland, where **DEWAN** paid UC1 $9,100 as the final installment payment to for UC1 to provide **NADAR** and **THAPA** with lawful permanent residence status, Employment Authorization Documents, and a Lawful Permanent Resident Card. Although the agreed upon payment was $12,000, **DEWAN** subtracted $2,900 as his commission for transferring the proceeds of the bribes to London, England via the wire transfer that occurred on July 17, 2012. UC1 delivered Employment Authorization Documents to **DEWAN** for **NADAR** and **THAPA**.

o.   On or about December 5, 2012, **DEWAN** met with UC1 in Columbia, Maryland, where UC1 delivered Lawful Permanent Resident Cards to **DEWAN** for **NADAR** and **THAPA**.

18 U.S.C. § 371

## COUNT TWO

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1-16 and paragraphs 18-29 of Count One of this Indictment are hereby incorporated by reference as though fully set forth herein.

2. Beginning on or about April 12, 2011 and ending on or about January 13, 2012, in the District of Maryland and elsewhere,

**KIRAN DEWAN and
AMJAD ISRAR,**

the defendants herein, did directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, to wit: an undercover federal agent the defendants believed to be a USCIS supervisor, with the intent to influence the public official to commit, aid in committing, and allow the commission of frauds on the United States, that is the defendants offered and gave the public official more than $25,000 for the public official to provide **ISRAR** with lawful permanent resident status, a Lawful Permanent Resident Card, and an Employment Authorization Document, although **ISRAR** did not meet the requirements for these immigration benefits.

18 U.S.C. § 201(b)(1)(B)
18 U.S.C. § 2

## COUNT THREE

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1-16 and paragraphs 18-29 of Count One of this Indictment are hereby incorporated by reference as though fully set forth herein.

2. Beginning on or about April 12, 2011 and ending on or about January 13, 2012, in the District of Maryland and elsewhere,

**KIRAN DEWAN and
MOHAMMAD KHAN,**

the defendants herein, did directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, to wit: an undercover federal agent the defendants believed to be a USCIS supervisor, with the intent to influence the public official to commit, aid in committing, and allow the commission of frauds on the United States, that is the defendants offered and gave the public official more than $25,000 for the public official to provide **KHAN** with lawful permanent resident status, a Lawful Permanent Resident Card, and an Employment Authorization Document, although **KHAN** did not meet the requirements for these immigration benefits.

18 U.S.C. § 201(b)(1)(B)
18 U.S.C. § 2

## COUNT FOUR

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1-16 and paragraphs 18-29 of Count One of this Indictment are hereby incorporated by reference as though fully set forth herein.

2. Beginning on or about April 12, 2011 and ending on or about December 5, 2012, in the District of Maryland and elsewhere,

**KIRAN DEWAN** and
**KHAZAR NADAR,**

the defendants herein, did directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, to wit: an undercover federal agent the defendants believed to be a USCIS supervisor, with the intent to influence the public official to commit, aid in committing, and allow the commission of frauds on the United States, that is the defendants offered and gave the public official more than $25,000 for the public official to provide **NADAR** with lawful permanent resident status, a Lawful Permanent Resident Card, and an Employment Authorization Document, although **NADAR** did not meet the requirements for these immigration benefits.

18 U.S.C. § 201(b)(1)(B)
18 U.S.C. § 2

## COUNT FIVE

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1-16 and paragraphs 18-29 of Count One of this Indictment are hereby incorporated by reference as though fully set forth herein.

2. Beginning on or about April 12, 2011 and ending on or about December 5, 2012, in the District of Maryland and elsewhere,

**KIRAN DEWAN** and
**NARAYAN THAPA,**

the defendants herein, did directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, to wit: an undercover federal agent the defendants believed to be a USCIS supervisor, with the intent to influence the public official to commit, aid in committing, and allow the commission of frauds on the United States, that is the defendants offered and gave the public official more than $25,000 for the public official to provide **THAPA** with lawful permanent resident status, a Lawful Permanent Resident Card, and an Employment Authorization Document, although **THAPA** did not meet the requirements for these immigration benefits.

18 U.S.C. § 201(b)(1)(B)
18 U.S.C. § 2

*Rod J. Rosenstein/hmg*
ROD J. ROSENSTEIN
UNITED STATES ATTORNEY

A TRUE BILL:

**SIGNATURE REDACTED**       1-8-13

Foreperson                          Date